**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Arthur D. Sims, | |
| Plaintiff, | |
| | Case No. 22 C 3743 |
| v. | |
| | Hon. LaShonda A. Hunt |
| Midway Broadcasting Corporation, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Arthur D. Sims sued Defendant Midway Broadcasting Corporation for discrimination and harassment based on disability and failure to accommodate under Section 102 of the Americans Disabilities Act, 42 U.S.C. § 12112, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1981a(a)(2). Midway filed a partial motion for summary judgment on the Rehabilitation Act claim, arguing that the statute does not apply because Midway is not a recipient of "Federal financial assistance." For the reasons discussed below, Midway's partial motion for summary judgment [51] is granted.

### BACKGROUND

Unless otherwise noted, the following facts are undisputed and taken from Sims' response to Midway's statement of material facts, (RSOF, Dkt. 57), and Midway's response to Sims' statement of additional material facts, (RSOAF, Dkt. 60).

1

Midway is a privately owned broadcasting company based in Chicago, Illinois. (RSOF ¶ 1 (1st)).[1] According to Sims, Midway owned a subsidiary called WVON, which in turn controlled two tax-exempt entities called WVON Blue Light Foundation and Friends of WVON. (RSOAF ¶ 1). WVON Blue Light Foundation dissolved in 2016, and Friends of WVON dissolved in 2021. (*Id.*; Reply, Ex. 2, Dkt. 59-1).[2] Sims began working for Midway in 2015.[3] (RSOF ¶ 1 (2nd)). Although Sims denies Midway's contention that his radio show was discontinued until the COVID-19 crisis was over and instead claims that he was permanently laid off, it is undisputed that he last worked for Midway in March 2020. (*Id.* ¶ 2 (2nd)).[4]

Midway received two Small Business Association (SBA) loans guaranteed through the Paycheck Protection Program (PPP). (*Id.* ¶ 3 (2nd)). The first loan was received on May 4, 2020, and was closed on August 9, 2021. (*Id.*) The second loan was received on March 29, 2021, and

---

[1] The paragraphs of Midway's statement of material facts are misnumbered. (*See* SOF, Dkt. 51-4) (starting with paragraphs 1 through 4 and then restarting at 1). Therefore, the corresponding paragraphs of Sims' response to Midway's statement of material facts are misnumbered as well. (*See* RSOF). Accordingly, the Court will refer to paragraphs 1 through 4 in these filings by the ¶ number and (1st) or (2nd).

[2] The Court exercises its authority to take judicial notice of these documents because they are from a government website. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). However, the Court may not take judicial notice of the website printouts cited by Sims as evidence of the entities' tax-exempt status, (*see* SOAF, Ex. A (www.propublica.org printout) & Ex. B (www.taxexemptworld.com printout)), as those are non-governmental websites not subject to judicial notice.

[3] It is unclear whether Sims worked for Midway as an independent contractor or employee. (*Compare* RSOF ¶ 2 (1st) (admitting that "Sims . . . was an independent contractor") *with* ¶ 1 (2nd) (admitting that Sims "began his employment . . ."); *see also* RSOAF ¶ 1 (denying statement regarding subsidiaries of Midway that were purportedly Sims' "employer" with respect to whether they were operating during the relevant time period but also referring to Sims' "employment")). These potential disputes are immaterial for purposes of this motion, however, because none of the dispositive issues turn on Sims' status as an independent contractor versus employee or which entity he worked for.

[4] Midway cited and attached the Complaint instead of the Amended Complaint in support of its statement regarding the end of Sims' radio show (and in doing so mischaracterized the allegation). (SOF ¶ 2 (2nd)) (citing and attaching Compl. ¶ 24 instead of ¶ 23, Dkt. 1, instead of Am. Compl. ¶ 24, Dkt 12). In response, Sims denied the statement and averred that he was permanently laid off. (RSOF ¶ 2 (2nd)).

was closed on March 24, 2022. (*Id.*) In March 2020, the last time Sims worked for Midway, it was not an applicant or recipient of any federal funding. (*Id.* ¶ 4 (2nd)).

In July 2022, Sims commenced this action by suing Midway for discrimination and harassment based on disability and failure to accommodate under various federal statutes. His Amended Complaint includes claims under the ADA (Count I) and Rehabilitation Act (Count II) and for damages (Count III). (Am. Compl.) Midway moved to dismiss Count II, (Mot. to Dismiss, Dkt. 16), and filed an Answer to Counts I and III, (Answer, Dkt. 17). After the Court denied Midway's dismissal motion, (Mem. Op. & Order, Dkt. 38), Midway filed an Amended Answer responding to all three counts, (Am. Ans., Dkt. 41). Discovery closed on November 14, 2023, (Minute Order, Dkt. 42), and Midway then filed the instant partial summary judgment motion, which is now fully briefed and ready for ruling.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of establishing the lack of any dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court must resolve all disputes and draw all reasonable inferences in favor of the non-movant. *Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016).

The party opposing summary judgment must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Indeed, the nonmoving party "must

3

inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Domka v. Portage Cnty.,* 523 F.3d 776, 783 (7th Cir. 2008) (quoting *United States v. Ritz*, 721 F.3d 825, 827 (7th Cir. 2013)) (internal quotations and citations omitted). Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)).

## DISCUSSION

Section 504 of the Rehabilitation Act prohibits discrimination against disabled individuals by "any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). For purposes of section 504, the term "Federal financial assistance" means "any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement[.]" 45 C.F.R. § 1232.3(f).

Midway moves for summary judgment on Count II under the Rehabilitation Act solely on the basis that the statute is inapplicable because Midway is not a recipient of Federal financial assistance. In response, Sims argues that Midway qualifies as a recipient of Federal financial assistance because it received PPP guaranteed loans and controlled tax-exempt subsidiaries. Midway challenges these arguments on both evidentiary and legal grounds. The Court will address each issue in turn.

## I. PPP Guarantees

According to Midway, guarantees are excluded from the definition of "Federal financial assistance" for purposes of section 504 of the Rehabilitation Act. First, Midway points to the plain language of the relevant regulation, which expressly excludes guarantees from the definition. *See*

4

45 C.F.R. § 1232.3(f) ("Federal financial assistance means any grant, loan, contract (**other than a procurement contract or a contract of insurance or guaranty**), or any other arrangement[.]") (emphasis added). Second, Midway cites two cases in which courts have allowed analogous claims to survive dismissal but notes that the decisions considered only whether the allegations were sufficient and reserved the ultimate issue for a more developed record at summary judgment.[5] *See Husbands v. Fin. Mgmt. Solutions, LLC*, No. 20 C 3618, 2021 WL 4339436, at *8 (D. Md. Sept. 23, 2021); *Fernandez v. Bruno Northfleet, Inc.*, 568 F. Supp. 3d 1294, 1300 (S.D. Fla. 2021). Finally, Midway contends that even if guarantees were not excluded from the definition of Federal financial assistance, the statute would be inapplicable because Midway had not applied for or received the loans when Sims last worked there, and the loans had been closed by the time this suit was filed.

In response, Sims relies on a 1992 case from the Eleventh Circuit in which that court declined to follow the regulation excluding guarantees from the definition of Federal financial assistance because the statute itself did not include such language. *See Moore v. Sun Bank of N. Fla., N.A.*, 923 F.2d 1423, 1432 (11th Cir. 1991). With respect to the timing of the loans, Sims argues that Midway "is silent on when it began the process of applying for the loan" and "may have received a financial benefit from applying for the PPP loan in advance of receiving the loan. For example, applying for the loan may have strengthened [Midway's] negotiating position with

---

[5] The Court reached the same conclusion in this matter, noting that a substantive decision would be more appropriate at summary judgment after Sims "had an opportunity to conduct discovery concerning any Federal financial assistance received by [Midway]." (Mem. Op. & Order at 6-7.)

vendors." [6] (Resp. at 6, Dkt. 56). According to Sims, he is entitled to an inference in his favor on this issue as the nonmoving party. (*Id.*) (citing *Anderson,* 477 U.S. at 255).

Here, the Court need not reach the legal question of whether PPP guarantees constitute Federal financial assistance under section 504 of the Rehabilitation Act, as Sims concedes that Midway had not *applied for or received* any funds from the PPP guaranteed SBA loans in March 2020—when his show was discontinued and/or he was laid off. (*See* RSOF ¶ 4 (2nd)). Furthermore, he has not come forward with any evidence to the contrary. In sum, there is no genuine dispute of material fact concerning the status of PPP loans at the operative time. And any argument that Midway somehow benefited from the mere application is pure speculation which is insufficient to defeat summary judgment.

The Seventh Circuit has repeatedly warned litigants that, "[a]s the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) & *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)); *see also Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Despite both Sims' claim that he needed more discovery, (Resp. to Mot to Dismiss ¶ 7, Dkt. 19), and the Court's explicit instruction to conduct discovery and present a more thorough analysis of this issue for summary judgment, (Mem. Op.

---

[6] As discussed in the following paragraph, this argument is patently false—Sims admitted that Midway had not applied for any Federal funding in March 2020. (*See* Resp. SOF ¶ 4 (2nd)) (Sims admitting that "Midway was not an applicant or recipient of any [F]ederal funding in March of 2020.").

& Order at 6-7), Sims apparently declined to follow through. (Reply at 5, 8, Dkt. 59). Without admissible or relevant evidence on this point, he cannot avoid summary judgment.

## II.    <u>Tax-Exempt Entities</u>

In his response to Midway's motion, Sims argues for the first time that Midway is the recipient of Federal financial assistance because he worked for a subsidiary (WVON) that controlled two tax-exempt entities (WVON Blue Light Foundation and Friends of WVON) and some courts have held that tax-exempt status constitutes Federal financial assistance. (Resp. at 4-5) (citing *McGlotten v. Connally*, 338 F. Supp. 448, 461 (D.D.C. 1972) (finding that tax-exempt status constituted Federal financial assistance for purposes of Title VI); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988) (finding that the defendant received Federal financial assistance within the meaning of both Title VI and Title IX); *E.H. by & through Herrera v. Valley Christian Acad.*, 616 F. Supp. 3d 1040, 1050 (C.D. Cal. 2022) (holding that "tax-exempt status confers a federal financial benefit that obligates compliance with Title IX.")). In support of this argument, Sims attached printouts from two websites purporting to show that WVON Blue Light Foundation and Friends of WVON are tax-exempt entities. According to Sims, that is enough to create an inference that Midway received Federal financial assistance and preclude summary judgment.

This argument fails for a number of reasons, primarily on evidentiary grounds. First, as noted *supra* at 2 n.2, the Court does not have authority to take judicial notice of unauthenticated printouts of non-government websites. Thus, Sims has not presented evidence of the entities' tax-exempt status that would be admissible at trial. Second, even if the Court could take judicial notice of the printouts, the content is insufficient to support Sims' position. The www.propublica.org printout for WVON Blue Light Foundation initially states "Tax-exempt since Aug. 2017" but then

disclaims that "[t]his organization is not listed on the IRS's most recent list of tax exempt organization[,]" and "Nonprofit Explorer has no Form 990 data" for the entity. (*See* SOAF, Ex. A). The www.taxexemptworld.com printout for Friends of WVON contains no affirmative statement that the entity is tax-exempt, stating only that it "may be tax exempt" under section 501(c)(3) of the Internal Revenue Code. (*See* SOAF, Ex. B). Third, Sims has failed to produce any evidence that he contracted with or was employed by either entity. Fourth, Midway responded with admissible evidence that the entities dissolved in 2019 and 2021. Finally, although Sims argued that the Court should find the non-precedential Title VI and IX cases that he cited to be persuasive, he made no attempt to explain why and did not cite any similar authority under the Rehabilitation Act. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). For all these reasons, the Court finds that the entities' purported tax-exempt status does not preclude summary judgment on the issue of whether Midway is a recipient of Federal financial assistance for purposes of section 504 of the Rehabilitation Act.

## **CONCLUSION**

Defendant's partial motion for summary judgment [51] is granted. Judgment will be entered in favor of Defendant on Count II of the Amended Complaint [12].

**DATED**: August 26, 2024                    **ENTERED**:

LaShonda A. Hunt
United States District Judge